UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARA FELDMAN, individually and on behalf
of all others similarly situated,

Plaintiff,

-against-

WAKEFERN FOOD CORPORATION,

Defendant.

**OPINION AND ORDER**

22-CV-06089 (PMH)

Sara Feldman ("Plaintiff") brings this putative class action against Wakefern Food Corporation ("Defendant") alleging that the labeling on Defendant's "Graham Crackers" product is deceptive and misleading. (Doc. 1, "Compl."). Plaintiff asserts the following claims for relief: (i) violations of New York General Business Law ("GBL") §§ 349 and 350; (ii) violation of various State Consumer Fraud Acts; (iii) breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA"); (iv) fraud; and (v) unjust enrichment.

Before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant moved to dismiss on April 5, 2023, in accordance with the briefing schedule set by the Court. (Doc. 16). Defendant filed a memorandum of law and declaration in support of its motion (Doc. 17, "Def. Br."; Doc. 18), Plaintiff filed a memorandum of law in opposition (Doc. 19, "Pl. Br."), and the motion was fully submitted upon the filing of Defendant's reply. (Doc. 20, "Reply").

For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant manufactures, labels, markets, and sells "Graham Crackers" under the "Bowl & Basket" brand (the "Product"). (Compl. ¶ 1). The front panel includes the phrases "Graham Crackers," "Sugar Honey," and "No High Fructose Corn Syrup," and features the image of a honey dipper in a jar of honey (*Id.* ¶ 2). The front panel also includes a "stamp" stating "Whole Grain – 8g or more per serving," with small text underneath which "references the 48g of whole grains people should consume daily. (*Id.* ¶¶ 2, 34, 38).



(*Id.* ¶ 1).[1]

The Product's ingredients are listed as follows:

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE WHEAT FLOUR), SUGAR, HIGH OLEIC CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND CITRIC ACID FOR FRESHNESS, HONEY, CONTAINS 2% OR LESS OF: LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

(*Id.* ¶ 30). The placement of "Enriched Flour" before "Graham Flour" in the Product's ingredient list, which lists ingredients in descending order of predominance by weight, allegedly reveals that "Enriched Flour" is the predominant flour in the Product. (*Id.* ¶¶ 30, 35).

Plaintiff alleges that the Product's front label misleads consumers into believing that the product "has a greater absolute and relative amount of whole grain graham flour compared to non-whole grain flour than it does and that it contains a non-de minimis amount of honey." (*Id.* ¶ 3). Specifically, she alleges that the term "Graham flour" is an alternative name for whole wheat flour and therefore "causes consumers to expect [the Product] is predominantly whole grain." (*Id.* ¶¶ 27-28). Plaintiff alleges that the "Whole Grain – 8g or more per serving" representation is similarly misleading because "it does not tell consumers that the Product is predominantly non-whole grain flour." (*Id.* ¶¶ 34-35). Lastly, Plaintiff alleges that honey is added to the Product to "impart a darker color to the crackers," which contributes to consumers getting the misleading impression the Product contains more whole grain graham flour than it does. (*Id.* ¶¶ 49, 52). Plaintiff alleges that

---

[1] Defendant asks the Court to take judicial notice of a "full and accurate copy of the Product label" (Def. Br. at 10) which is attached as Exhibit A to the Declaration of Tyler A. Young (Doc. 18). Although Defendant's request for judicial notice is unopposed, the Court may and does properly consider Exhibit A as a "document[] incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

consumers prefer whole grains to non-whole, or refined, grains because whole grains are nutritionally superior; and, therefore, the Product is sold at a higher price than it would be sold for absent the misleading representations. (*Id.* ¶¶ 4-5, 61).

Plaintiff purchased the product at multiple locations, including one in Yonkers, New York, between December 2021 and February 2022. (*Id.* ¶ 88). Plaintiff allegedly relied on the "words, terms[,] coloring, descriptions, layout, placement, packaging and/or images on the Product, on the labeling, statements, omissions, claims and, statements, made by Defendant . . . ." (*Id.* ¶¶ 89-90). Plaintiff further alleges that "she believed, expected, and desired that the Product had a "greater absolute and/or relative amount of whole grain graham flour compared to non-whole grain flour than it did" because that is what the representations and omissions said and implied. (*Id.*). Plaintiff claims she "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it." (*Id.* ¶ 92).

Plaintiff seeks certification of a "New York Class" and a "Consumer Fraud Multi-State Class" under Federal Rule of Civil Procedure Rule 23 in connection with this action. (*Id.* ¶ 96).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.  <u>First Claim for Relief: New York General Business Law §§ 349 and 350</u>

Plaintiff's first claim for relief alleges violations of both GBL §§ 349 and 350. "Section 349 'prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (cleaned up). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)); *see also Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 (2d Cir.

Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349").

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). "[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). To satisfy the reasonable consumer standard at the pleading stage, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (cleaned up). Defendant raises two arguments relevant to Plaintiff's GBL claims: (i) Plaintiff fails to plausibly allege that reasonable consumers would be deceived by the challenged representations; and (ii) Plaintiff has not suffered an injury. (Def. Br. at 17-31).

A. <u>Materially Misleading</u>

Defendant first argues that reasonable consumers would not be deceived by the challenged representations. (Def. Br. at 17). "[I]n determining whether a reasonable consumer would have been misled by a [product label], context is crucial." *Fink*, 714 F.3d at 742. "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a

6

claim of deception." *Id.* Courts must therefore "consider the challenged [label] as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Hoffmann v. Kashi Sales, L.L.C.*, No. 21-CV-09642, 2022 WL 17823171, at *3 (S.D.N.Y. Dec. 20, 2022) ("courts assess each allegedly misleading statement in light of its context on the product label or advertisement as a whole, contemplating the entire mosaic rather than each tile separately").

Plaintiff alleges that the Product's front label—which includes the name "Graham Crackers," the stamp stating "Whole Grain – 8g or more per serving," and the "dark brown color" of the pictured crackers[3]—is deceptive. (Pl. Br. at 17). The deception occurs because the front label misleads consumers to believe that the Product contained a "greater absolute and/or relative amount of whole grain graham flour compared to non-whole grain flour than it [does]." (*Id.*; Compl. ¶ 104). Courts in this District have found nearly identical allegations sufficient to withstand a motion to dismiss.[4] *See Brockington v. Dollar Gen. Corp.*, No. 1:22-CV-06666, 2023 WL 6317992, at *9 (S.D.N.Y. Sept. 28, 2023) ("It is plausible that a reasonable consumer would construe the front label of the Product, with its emphasis on "Graham," pictures of dark-colored crackers, and statement that the Product 'Contains 8g of whole grain per serving,' to constitute a representation by Defendant that whole-grain graham flour is the predominant flour used in the

---

[3] To the extent Plaintiff references representations regarding the honey ingredient in her Complaint (i.e. the phrase "Sugar Honey" and the image of a honey dipper in a jar of honey), Plaintiff only argues in her opposition brief that honey gives the crackers a "darker color," contributing to consumers' expectation that there is a predominant amount of whole grain graham flour. (Pl. Br. at 15; Compl. ¶ 2). Accordingly, aside from the honey ingredient's alleged effect on cracker color, Plaintiff does not separately argue that any honey-related representations are misleading.

[4] Given the multiple cases in this District that are directly on-point, the Court is not persuaded by Defendant's reliance on two decisions outside of this District which reached a different conclusion (Def. Br. at 17)—*Kennedy v. Mondelez Glob. LLC*, No. 19-CV-00302, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) and *Hauger v. Dollar Gen. Corp.*, No. 21-CV-01270, 2022 WL 2532487, at *4 (C.D. Ill. July 7, 2022).

Product."); *see also Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 280 (S.D.N.Y. 2022) ("[T]he Court cannot conclude as a matter of law that no reasonable consumer would be misled by Defendant's use of the word 'graham' in the Product's packaging [to believe that that the Product comprises more of enriched flour than it does of whole grain flour]"); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 278 (S.D.N.Y. 2021) (denying motion to dismiss where "Valcarcel alleges that that the packaging for Ahold's crackers is materially misleading because [t]he Product's name, and the emphasis on the word 'Graham,' gives reasonable consumers the impression that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used."); *Campbell*, 516 F. Supp. 3d at 383 (denying motion to dismiss where a reasonable customer who is aware of the meaning of the word "graham" could find the packaging of the product to be "misleading because the packaging would 'communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain.'") (emphasis in original).[5] These Courts generally found it inappropriate at the motion to dismiss stage to resolve the highly factual inquiry of how a reasonable consumer understands representations about whole-grain graham flour. Drawing all inferences in favor of Plaintiff as the Court must at the pleading stage, this Court reaches the same conclusion and finds Plaintiff's allegations sufficient to state a claim under §§349 and 350.

    B.  <u>Injury</u>

       Defendant separately argues that Plaintiff's GBL claims fail because the allegations that he paid a price premium are "conclusory." (Reply at 13). To plead an injury pursuant to either §§

---

[5] Defendant attempts to distinguish *Valcarcel* and *Campbell* on the basis that those courts "relied heavily on graphical distinctions between the words 'Graham' and 'Crackers'" (Def. Br. at 24-26), but Defendant overstates those courts' consideration of graphic design details (i.e. font, color, type face). As indicated by the Court in *Brockington*, "[a]t the pleading stage, the discrepancies among the packaging identified by Defendant represent a distinction that does not make a difference." 2023 WL 6317992 at *10.

349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021). Instead, a plaintiff "must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012) (cleaned up).

An injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have paid if the defendant did not engage in allegedly deceptive practices. *See e.g., Orlander*, 802 F.3d at 302; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020). A price premium theory requires a plaintiff to "allege that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (cleaned up).

Plaintiff alleges that the Product "is sold at a premium price, approximately no less than $3.29 for 14.4 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." (Compl. ¶ 61). Plaintiff further alleges that she "relied on the representations and omissions to believe the Product had a greater absolute and/or relative amount of whole grain graham flour compared to non-whole grain flour than it did" and that she "would not have

purchased" or would not have "paid as much if the true facts had been known, suffering damages" (*Id*. ¶¶ 107-108). These allegations sufficiently allege a price premium theory at this stage. All that is required to allege injury under GBL §§ 349 and 350 is that the Plaintiff "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). Here, Plaintiff specifically alleges that consumers "prefer whole grains to non-whole, or refined, grains," that Defendant labels its products "graham crackers," and that Defendant adds honey to give the Product a darker color in order to mislead the consumer into believing the Product is predominantly whole grain, charging consumers a premium price. (Compl. ¶¶ 4, 28, 52, 61).

Accordingly, Plaintiff has sufficiently pled an injury in connection with her claims alleging violations of GBL §§ 349 and 350.

### C.   Affirmative Defense of Preemption

Defendant also asserts the affirmative defense of preemption. Preemption is a creature of the Supremacy Clause of the United States Constitution which states that "the Laws of the United States . . . shall be the supreme Law of the Land . . . ." U.S. Const. art. VI, cl. 2; *see also Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, 18 (2d Cir. 2018) (explaining that the Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law" (quoting *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008)). Although preemption is an affirmative defense to be pled and proven, it "can still support a motion to dismiss if the . . . barrier to suit is evident from the face of the complaint." *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 236 n.3 (2d Cir. 2021) (quoting *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015)). Where, as here, preemption is considered on a motion to dismiss, "[a] district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that

is not preempted." *Reid v. GMC Skin Care USA Inc.*, No. 15-CV-00277, 2016 WL 403497, at *8

(N.D.N.Y. Jan. 15, 2016) (quoting *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d

Cir. 2015)).

      Defendant contends that Plaintiff's claims are expressly preempted by the Federal Food,

Drug and Cosmetic Act ("FDCA"), which governs the terms and images on the Product's label.

(Def. Br. at 13-16). The Court in *Valcarcel* summarized the legal basis for Defendant's preemption

argument:

> The FDCA prohibits the "misbranding" of food in interstate
> commerce. 21 U.S.C. § 331. In particular, one provision of the Act,
> 21 U.S.C. § 343, identifies twenty-three grounds for which a food
> "shall be deemed misbranded." This includes a catch-all deeming all
> products misbranded if "its labeling is false or misleading in any
> particular," *id*. § 343(a)(1), as well as more specific grounds.
> Relevant here is § 343(i), which provides that a good is misbranded
> if the label does not bear "the common or usual name of the food, if
> any there be." *Id.* § 343(i). The U.S. Food and Drug Administration
> ("FDA") has promulgated regulations establishing "general
> principles" for the "common or usual name of a food," among them
> that "[t]he name shall be uniform among all identical or similar
> products" and that the name "may be established [either] by
> common usage" or regulation. 21 C.F.R. § 102.5(a), (d).
>
> The FDCA, as amended by the Nutrition Labeling and Education
> Act of 1990, explicitly preempts state laws to the extent they differ
> from applicable federal labeling laws. Specifically, as implicated
> here, § 343-1(a)(3) provides that "no State . . . may . . . establish . .
> . any requirement for the labeling of food" that is: (1) "of the type
> required by . . . [21 U.S.C. §] 343(i)(1)"; and (2) "not identical to
> the requirement of such section." 21 U.S.C. § 343–1(a)(3). Thus,
> any state requirement "of the [same] type" as the requirement that
> the good be labeled with the "common or usual name" is preempted
> to the extent it requires something different. *Id.* § 343(a)(1).

577 F. Supp. 3d at 275-76. Here, because FDA regulations do not prescribe a "standard of identity" for graham crackers, federal law requires labeling the Product with its "common or usual name" which may be established by "common usage." *See Valcarcel*, 577 F. Supp. 3d at 276 (S.D.N.Y. 2021) (citing 21 C.F.R. § 102.5(a), (d)); *see also Brockington*, 2023 WL 6317992 at \*5. Defendant argues that the Product's use of the term "Graham Crackers"—which Defendant maintains is its common or usual name—is expressly permitted by the FDA and, therefore, any state requirement that requires labeling the crackers in some other manner is preempted. (Reply at 6).

Specifically, Defendant argues that the "common or usual name" of the Product is "Graham Crackers" because products like the one at issue here, "a flat, rectangular, perforated, sweet, crunchy cracker," have been sold under the name "Graham Crackers" for decades. (Def. Br. at 14). Plaintiff contends that these factual assertions regarding "common usage" of the term "Graham Cracker" cannot be determined at the motion to dismiss stage. (Pl. Br. at 17-18). "At the pleading stage, preemption constitutes grounds for dismissal only 'if the statute's barrier to suit is evident from the face of the complaint.'" *K.D. Hercules, Inc. v. Laborers Loc. 78 of Laborers' Int'l Union of N. Am.*, 2021 WL 1614369, at \*2 (S.D.N.Y. Apr. 26, 2021) (quoting *Ricci v. Teamsters Union Local* 456, 781 F.3d 25, 28 (2d Cir. 2015)). Here, Defendant asks the Court to "draw on experience and common sense" to determine the "common or usual name" of the Product. (Def. Br. at 15). Defendant's argument necessarily asks the Court to go beyond the four-corners of the Complaint to determine the "common usage" of the term "Graham Cracker." *See Valcarcel*, 577 F. Supp. 3d at 276-77. "This [the Court] cannot do." *Id*. Actually, there is nothing in the Plaintiff's Complaint as proof other than the name itself and the dictionary definitions to support Defendant's entitlement

to the affirmative defense of preemption at this time.[6] *See i.e. id.*; *Warren*, 592 F. Supp. 3d at 283-84; *Brockington*, 2023 WL 6317992 at *5.

Accordingly, the Court declines to dismiss Plaintiff's first claim for relief for violations of GBL §§ 349 and 350 based on alleged misrepresentations regarding the predominance of non-whole grain flour.

II. <u>Second Claim for Relief: Violation of State Consumer Fraud Acts</u>

Plaintiff brings claims as a putative class action on behalf of "the Consumer Fraud Multi-State Class," which she defines as "[a]ll persons in the States of New Jersey, Pennsylvania, New Hampshire, Delaware and Connecticut who purchased the Product during the statutes of limitations for each cause of action alleged." (Compl. ¶¶ 96, 109-113). Defendant argues that Plaintiff's multi-state claims fail for the same reasons the GBL claims do. (Def. Br. at 32-33; Reply at 14). The Court has already concluded, however, that Plaintiff's GBL claims have been adequately pled.

Defendant separately argues that Plaintiff has failed to fulfill statutory requirements under the statutes for Connecticut and New Jersey, and that the statute for Delaware bars claims for damages where, as here, Plaintiff is not entitled to injunctive relief. (Def. Br. at 32-33). Plaintiff does not dispute that she failed to meet these statutory requirements under the laws of Connecticut, New Jersey, and Delaware, but rather argues that the Court should "defer standing objections until after

---

[6] In fact, Plaintiff's allegations undermine Defendant's argument that the term "Graham Cracker" is commonly used to identify "a flat, rectangular, perforated, sweet, crunchy cracker." (Def. Br. at 14). Plaintiff alleges that "[d]ictionaries confirm . . . commonly held beliefs when it comes to a 'graham cracker,' defining it as 'a slightly sweet cracker made of whole wheat flour' and 'a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour.'" (Compl. ¶ 29). These alleged dictionary definitions support Plaintiff's position that the "common usage" of the term "Graham Cracker" is limited to crackers made primarily with whole wheat flour.

class certification . . . ." (Pl. Br. at 20-21).[7] Therefore, to the extent Plaintiff brings claims under the laws of Connecticut, New Jersey, and Delaware, those claims are dismissed.

Accordingly, Plaintiff's claims brought under the laws of Connecticut, New Jersey, and Delaware are dismissed, and her claims brought under the laws of Pennsylvania and New Hampshire will proceed.

III.   <u>Third Claim for Relief: Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.</u>

Defendant argues that Plaintiff's claims for breaches of warranty should be dismissed because Plaintiff failed to provide pre-suit notice. (Reply at 14).

"In order to assert a claim for breach of an express or implied warranty under New York law, 'a buyer must provide the seller with timely notice of the alleged breach.'" *Valcarcel*, 577 F. Supp. 3d at 282 (citing N.Y. U.C.C. § 2-607(3)(a)). Plaintiff first argues that "notice requirements for breaches of warranty have long been jettisoned" for retail sales. (Pl. Br. at 21). But that concept

---

[7] "In a 'counseled' case, 'a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage"); *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (affirming the district court's conclusion that plaintiff abandoned certain claims when the opposition "argued at length as to why at least parts of the [defendants'] motion [to dismiss] should be denied" but did not address the abandoned claims).The Court, given Plaintiff's failure to address whether she met the statutory requirements under the consumer fraud acts of Connecticut, New Jersey, and Delaware, can and does deem those claims abandoned.

"has no application here where Plaintiff claims purely economic injury."[8] *Brockington*, 2023 WL 6317992 at *14. Plaintiff separately argues that the filing of her Complaint constitutes sufficient notice. (Pl. Br. at 21). Courts in this District have held that "timely, pre-litigation notice" is "a condition precedent to bringing an action for breach of warranty." *Valcarcel*, 577 F. Supp. 3d at 282. Accordingly, Plaintiff failed to allege pre-suit notice and that is fatal to Plaintiff's breach of express warranty claim.

As to the implied warranty theory, "[a] breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021) (quoting U.C.C. § 2-314(c)). Here, Plaintiff does not allege that the Product was unfit for its ordinary purpose—human consumption. *See i.e. Brockington*, 2023 WL 6317992 at *15 ("Plaintiff does not allege that the [graham cracker] Product was unfit for human consumption. He therefore fails to allege that the Product was unfit for the ordinary purposes for which it was intended.").

Additionally, to establish a claim for the breach of an implied warranty of fitness for a particular purpose, "Plaintiff must plead . . . that Defendant knew of the particular purpose for which the goods were required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods." *Id.* at *14. Here, Plaintiff alleges that the Product was not merchantable because "Defendant had reason to know the particular purpose for which

---

[8] Plaintiff, in support of her argument that pre-suit notice is satisfied by the filing of this lawsuit, cites *Gavilanes v. Gerber Prods. Co.*, for the proposition that under New York law, "a plaintiff's pleadings may constitute reasonable notice." No. 20-CV-05558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021). However, "*Gavilanes*, the case on which Plaintiff relies, 'has been repeatedly criticized by courts in this district as misapplying New York law and reflects a disfavored minority view.'" *Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025, 2024 WL 22061, at *6 (S.D.N.Y. Jan. 2, 2024) (quoting *Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-09824, 2023 WL 8005319, at *8 (S.D.N.Y. Nov. 17, 2023)). "[T]he *Gavilanes* exception to the notice requirement is limited to products for human consumption that cause physical injury . . . and simply does not apply where, as here, a plaintiff alleges only economic injury . . . in connection with claims involving a product not intended for human consumption. . . ." *Id.*

the Product was bought by Plaintiff, because she expected [the Product] had a greater absolute and/or relative amount of whole grain graham flour compared to non-whole grain flour than it did, and she relied on Defendant's skill and judgment to select or furnish such a suitable product." (Compl. ¶ 128). These conclusory allegations are insufficient to state a claim for breach of the implied warranty of fitness for a particular purpose. *See i.e. Brockington*, 2023 WL 6317992 at *15. Accordingly, Defendant's motion is granted as to Plaintiff's claims for breach of express warranty and breach of the implied warranty of merchantability and the warranty of fitness for a particular purpose.

With respect to her claim under the MMWA, Plaintiff, in her opposition, does not oppose Defendant's argument that "the MMWA claim fails automatically because the state-law warranty claims fail." (Def. Br. at 31). Accordingly, because Plaintiff failed to state a breach of warranty claim under New York law, her claim under the MMWA fails as well. *See Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the [MMWA], plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law."); *see also Valcarcel*, 577 F. Supp. 3d at 282; *Warren*, 592 F. Supp. 3d at 286.

IV.   Fourth Claim for Relief: Fraud

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). Claims of fraud must be pled "'with particularity,'" *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 9(b)), and thus a plaintiff

must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (internal quotation marks omitted). Put differently, a plaintiff must identify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-CV-08990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig*, 519 F. Supp. 3d at 166 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). Defendant argues that Plaintiff failed to plead facts that give rise to a strong inference of fraudulent intent. (Reply at 15). The Court agrees.

Here, Plaintiff's only allegation about Defendant's intent is the conclusory allegation that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 133). That allegation on its own is insufficient because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants[ ] 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).

Accordingly, Defendant's motion is granted as to Plaintiff's claim for fraud.

V.   <u>Fifth Claim for Relief: Unjust Enrichment</u>

"To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 840 N.Y.S.2d 445, 448 (App. Div. 2007)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Nor is it "a catchall cause of action to be used when others fail." *Id*.

Here, Plaintiff acknowledges that her theory of unjust enrichment is duplicative because it is based on the same underlying conduct. (Pl. Br. at 23). Accordingly, Plaintiff's unjust enrichment claim is dismissed. *See i.e. Brockington*, 2023 WL 6317992 at *17 (dismissing unjust enrichment claim where it was "based on the same facts and theories as [plaintiff's] statutory claims under GBL §§ 349, 350, his fraud claim, and his breach of warranty claim."); *see also Valcarcel*, 577 F. Supp. 3d at 283 (dismissing unjust enrichment claim where plaintiff "has offered no explanation of how its unjust enrichment claim differs from its other causes of action, which seek relief from the same conduct.").

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss Plaintiff's Complaint.

The Court GRANTS the motion to dismiss with respect to the: (i) Second Claim for Relief: state consumer fraud acts in New Jersey, Connecticut, and Delaware; (ii) Third Claim for Relief: breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose,

and the MMWA; (iii) Fourth Claim for Relief: fraud; and (iv) Fifth Claim for Relief: unjust enrichment.

The Court DENIES the motion to dismiss with respect to the: (i) First Claim for Relief: violations of GBL §§ 349 and 350; and (ii) Second Claim for relief: violations of state consumer fraud acts in Pennsylvania and New Hampshire.

Defendant is directed to file an Answer to the Complaint within 14 days of the issuance of this Opinion and Order. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 16.

**SO ORDERED.**

Dated:     White Plains, New York
               February 8, 2024

_____
PHILIP M. HALPERN
United States District Judge